IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
MARYLAND
(Northern Division)

| | |
|---|---|
| CN OF GB, INC., <br> d/b/a CNAC OF BALTIMORE, <br><br> Plaintiff <br> v. <br><br> FIRST TENNESSEE BANK NATIONAL ASSOCIATION, *et al.* <br><br> Defendants. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This matter comes before the court on Defendant First Horizon Bank's Motion to Dismiss, or in the alternative Motion for Summary Judgment (the "Motion"). (ECF No. 9.) The court has reviewed the parties' submissions and no hearing is necessary. Local Rule 105.6 (D. Md. 2021). For the reasons set forth herein, the Motion will be granted.

## BACKGROUND[1]

Plaintiff CN of GB, Inc. d/b/a CNAC of Baltimore ("CNAC") is a Maryland corporation with its principal place of business in Glen Burnie, Maryland. (Complaint, ECF No. 1 ¶ 3.) Defendant First Horizon Bank[2] is a Tennessee corporation with its principal place of business in

---

[1] For purposes of adjudicating the Motion, the court accepts as true all well-pled facts set forth in the Complaint.
[2] Defendant First Horizon Bank ("First Horizon") notes that, although the Complaint lists First Horizon and First Tennessee Bank National Association ("First Tennessee") as separate defendants, they are a single entity. According to First Horizon, in 2019, First Horizon became the successor to First Tennessee when First Tennessee converted from a national bank into a Tennessee state-chartered bank and changed its name to First Horizon. (ECF No. 9, p. 1 n.1.) Accordingly, the court will treat Defendants First Tennessee and First Horizon as a single entity for purposes of resolving this Motion, and refers to them jointly as "First Horizon." Where necessary, for clarity, the court may refer to First Tennessee where joint reference to the parties as First Horizon would result in confusion.

Memphis, Tennessee. *Id.* ¶ 5. First Horizon is successor by conversion to First Tennessee Bank National. (ECF No. 9, p. 1.)

Plaintiff CNAC is a finance affiliate of two used car dealerships based in Maryland that operate under the brand "Byrider." (ECF No. 1 ¶ 1.) CNAC maintained a line of credit ("LOC") with First Horizon to provide financing to Byrider's customers. *Id.* In October 2020, First Horizon bank manager Paula Davis made an oral offer (by telephone) to discount CNAC's LOC payoff by $500,000 if CNAC transferred its LOC to a different financial institution (or otherwise paid off the LOC). *Id.* ¶ 10. In April 2021, CNAC received a term sheet to transfer its LOC to another institution (Howard Bank); upon presentation of the term sheet to First Horizon, First Horizon reneged on its promise on the basis that the offer expired on December 31, 2020. *Id.* ¶ 12. CNAC asserts that First Horizon's offer did not include an expiration date and was not conditioned on CNAC transferring its LOC by any date. Compl. *passim*.

After complaining to First Horizon, First Horizon's Executive Vice President, Dave Dawson, advised CNAC by letter that the bank "does not dispute the fact that in October of 2020, [Mrs. Davis] made a verbal offer of a $500,000 payoff discount. . . . The discount of $500,000 was intended to help get the loan refinanced by December 31, 2020." ("Dawson Letter" at ECF No. 13-1.) According to the letter, December 31, 2020, was the loan maturity date at the time First Horizon extended its payoff discount offer; the maturity date was later extended to July 31, 2021 by written LOC amendment on March 1, 2021, which makes no mention of a payoff discount. *Id.*[3]

---

[3] First Horizon attaches the Dawson Letter to its Reply to the Motion at ECF No. 13; and the Dawson Letter is the writing that Plaintiff contends memorializes the oral promise. (ECF No. 1 ¶ 13; ECF Nos. 12 and 16, *passim*.) Plaintiff asserts by Surreply that First Horizon raises improper new argument in its Reply because it attached the Dawson Letter to counter Plaintiff's Opposition that the letter contains the essential terms of the parties' agreement in satisfaction of the Maryland Credit Agreement Act ("MCAA") at MD. CODE ANN, CTS. & JUD. PROC. § 5-408(b). (ECF No. 16 at 2.) First Horizon does not raise an improper new argument in its Reply. Plaintiff's Complaint relies on the Dawson Letter; the Motion challenges the existence of a writing memorializing the alleged oral agreement as required by the MCAA. Plaintiff is correct that First Horizon's Motion does not mention the Dawson Letter, but that is of no moment. First Horizon does not challenge the existence of the Dawson Letter – rather, it challenges its legal significance under

On June 14, 2022, CNAC filed its Complaint setting forth two counts: Breach of Contract (Count I) and Promissory Estoppel (Count II).  The prayer for relief seeks: (i) a declaration that CNAC accepted First Horizon's offer to discount the payoff by $500,000 when it refinanced its LOC with another financial institution; and that First Horizon breached the contract by not discounting the LOC payoff; (ii) an award of compensatory and consequential damages in excess of $500,000; (iii) costs; and (iv) any such other relief the court deems just and proper.  (ECF No. 1 at 6.)

First Horizon moves to dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6), or, alternatively, for summary judgment pursuant to Rule 12(d).  (ECF No. 9. At 1.)

---

the MCAA.  Further, CNAC places great emphasis on the Dawson Letter in its Opposition.  First Horizon properly addressed CNAC's Opposition by Reply including providing the letter to aid the court.  "The purpose of a reply is to address counter-points made in an opposition."  *Allen v. Enabling Techs. Corp.,* 2016 U.S. Dist. LEXIS 106005 *11 (D. Md. Aug. 11, 2016).

In ruling on a 12(b)(6) motion, a court usually does not consider material outside of the complaint.  A court may consider documents attached to motions papers if the document is "integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity."  *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.,* 190 F.3d 609, 618 (4th Cir. 1999)).  "An integral document is a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'"  *Chesapeake Bay Found. Inc., v. Severstal Sparrows Point, LLC,* 794 F. Supp. 2d. 602, 611 (D. Md. 201) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)).  The Dawson Letter is integral to the Complaint because the Complaint expressly references and quotes the letter; and CNAC contends its rights on which it sues arise in part from the letter as a memorialization of the alleged oral contract.  Further, neither party disputes the authenticity of the Dawson Letter.  Therefore, the court will consider the Dawson Letter without converting First Horizon's Motion to Dismiss into one for summary judgment.  *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.,* 190 F.3d 609, 618 (4th Cir. 1999)); *Chesapeake Bay Found. Inc., v. Severstal Sparrows Point, LLC,* 794 F. Supp. 2d. 602, 611 (D. Md. 201) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)).  For clarity, the court has determined it need not make reference to or consider the Sixth Amendment to the Forbearance Agreement attached as Exhibit 1 in support of First Horizon's alternative Rule 56 motion.  (ECF No. 9-2.)  Rather, the court will adjudicate the Motion on 12(b)(6) grounds alone.

## LEGAL STANDARDS

### Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion "tests the legal sufficiency of a complaint. It does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Accordingly, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244 (citing *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "A complaint that provides no more than 'labels and conclusions,' or 'formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 21-cv-1637, 2021 U.S. Dist. LEXIS 221041, at *4 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

**<u>Federal Rule of Civil Procedure 12(d)</u>**

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). That notwithstanding, "under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, 'the motion must be treated as one for summary judgment under Rule 56,' but '[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Pevia v. Hogan,* 443 F. Supp. 3d 612, 626 (D. Md. 2020) (quoting FED. R. CIV. P. 12(d)) (citations omitted). "[W]hen the movant expressly captions its motion 'in the alternative' as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court 'does not have an obligation to notify parties of the obvious.'" *Pevia,* 443 F. Supp. 3d at 626 (quoting *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998))

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2011 Supp.). Within this context, a district judge must exercise her discretion "with great caution and attention to the parties' procedural rights." *Id.* at 149. Courts must determine whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is needed. *Id.* at 165, 167. "Ordinarily, summary judgment is inappropriate 'where the parties have not had an opportunity for reasonable

5

discovery.'" *Pevia,* 443 F. Supp. 3d at 626 (quoting *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012)).

**Federal Rule of Civil Procedure 56**

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)). This court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

In undertaking this inquiry, this court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). This court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also*

*Jacobs v. N.C. Adin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866-68 (2014).

## ANALYSIS[4]

### I. BREACH OF CONTRACT – COUNT I

First Horizon argues that Counts I fails to state a cognizable claim because the alleged oral agreement is unenforceable under the MCAA. (ECF No. 9-1 at 4.) Although the Complaint relies on an "oral contract," Plaintiff CNAC counters that it accepted First Horizon's oral offer, that CNAC fulfilled its end of the deal by transferring its LOC to Howard Bank, and that the parties' agreement is valid and enforceable because the Dawson Letter adequately memorializes the agreement in satisfaction of the statute of frauds contained within the MCAA. (ECF No. 1 ¶ 19; ECF No. 12, p. 3.) First Horizon asserts that the Dawson Letter is fatal to CNAC's claims. (ECF No. 13 at 4.)

To state a claim for breach of contract, Plaintiff must allege "that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (Md. 2001)). The MCAA provides in pertinent part: "[a] credit agreement is not enforceable by way of action or defense unless it: (1) is in writing; (2) expresses consideration; (3) sets forth the relevant terms and conditions of the agreement; and (4) is signed by the person against whom enforcement is sought." MD. CODE ANN., CTS. & JUD. PROC. § 5-408(b). "Credit agreement includes agreeing to take or to not take certain actions by a financial institution in connection with an existing or prospective credit agreement." *Id.* § 5-408(a)(2)(ii).

---

[4] No choice of law dispute has been raised and the parties do not dispute that Maryland law applies to the claims set forth in the Complaint.

"The statute bars consideration of certain extrinsic evidence—particularly evidence that does not appear in writing—in disputes about credit agreements." *Knight v. Mfrs. & Traders Trust Co.*, 84 F. Supp. 3d 436, 444 (D. Md. 2015).

"[T]he written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite understanding." *Slice v. Carozza Props., Inc.*, 215 Md. 357, 368 (Md. 1958). "Creation of a contract requires an offer by one party and acceptance by the other party." *Cochran v. Norkunas*, 398 Md. 1, 23 (2007). "Acceptance may be manifested by acts as well as by words." *Id.* at 23 (citing *Porter v. General Boiler Casing Co.,* 284 Md. 402, 411, (1979)). "The offer by one party of specified compensation for the performance of a certain act as a proposition to all persons who may accept and comply with its conditions constitutes a promise by the offeror. The performance of that act is the consideration for such promise. The result is an enforceable contract." *Rosenthal v. Al Packer Ford, Inc.,* 36 Md. App. 349, 353 (1977); *see also Sharp Elecs. Corp. v. Deutsche Fin. Serv. Corp.*, 216 F.3d 388, 393 (4th Cir. 2000) (applying Maryland law) (observing that "under a unilateral contract, as long as the promisor holds open his offer inviting acceptance by performance, the promisee can bind the promisor by such performance").

The Complaint alleges:

> Subsequently, the Bank decided it wanted to get out of asset-based lending for small businesses like CNAC. In October 2020, during an otherwise routine phone call, Paula Davis, who was the Bank manager in charge of CNAC's account, made the following unsolicited offer to CNAC's principals: as an incentive for CNAC to move its line of credit to another institution, the Bank would discount the payoff amount on CNAC's line of credit by $500,000.
>
> . . . After CNAC sent the term sheet to Ms. Davis, Ms. Davis told Mr. Griffith that the Bank's offer to discount the payoff amount by

> $500,000—which she had reiterated in December 2020—had purportedly expired that same month, on December 31, 2020. It was the first time that Ms. Davis, or anyone else at the Bank, ever told CNAC that the Bank's offer was time limited.
>
> . . . CNAC received a letter from Dave Dawson, one of the Bank's Executive Vice Presidents, who stated that "Mrs. Davis does not dispute the fact that in October of 2020, she made a verbal offer of a $500,000 payoff discount" as an incentive to help CNAC find a new lender. Notwithstanding the Bank's admission, it has refused to honor its promise.
>
> In October 2020, the Bank promised CNAC that it would discount the payoff amount on CNAC's line of credit by $500,000 if CNAC refinanced the line of credit with another lender or paid off the loan through a sale of the business.
>
> CNAC accepted the Bank's offer by refinancing its line of credit with Howard Bank in a deal that closed on June 29, 2021.
>
> Notwithstanding CNAC's acceptance of the Bank's offer and its performance of its obligations under the oral contract that was formed, the Bank failed to perform its end of the bargain by discounting CNAC's payoff amount by $500,000.

(ECF No. 1 ¶¶ 10, 12-13, 17-19.)

### A.     Credit Agreement

As an initial matter the court must determine whether the alleged "oral contract" is a credit agreement under the MCAA at § 5-408(a)(2)(ii). Plaintiff alleges that it closed on a loan with First Horizon in 2012. (ECF No. 1 ¶ 9.) First Horizon's offer related to CNAC's then-existing LOC with First Horizon, whereby, First Horizon offered to discount CNAC's loan payoff if it transferred its line of credit to another institution. *Id.* ¶ 10. Because First Horizon offered to discount the payoff amount under its existing credit agreement with CNAC, the alleged "oral contract" is a credit agreement subject to the requirements of the MCAA. Therefore, the court will analyze whether the Dawson Letter is competent to support CNAC's breach of contract claim.

### B. Writing

"Since 1989, . . . Maryland statutory law [the MCAA] has provided that a commercial loan agreement will be unenforceable unless in writing and that an oral modification will not suffice. *Dupont Heights Ltd. Pshp. v. Riggs Nat'l Bank,* 949 F. Supp. 383, 388 (D. Md. 1996). "[A] court should only engage the statute of frauds portion of the [MCAA] when, either through affirmative claim or defense, a commercial borrower or lender either attempts to recover on a verbal promise to lend/borrow, or seeks to enforce a verbal modification of an existing credit agreement." *Donnelly v. Branch Banking & Trust Co.,* 971 F. Supp. 2d 495, 504 (D. Md. 2013) (quoting *Pease v. Wachovia SBA Lending, Inc.*, 416 Md. 211, 225 (Md. 2010).

Count I of the Complaint is based on "the oral contract that was formed." (ECF No. 1 ¶ 19.) An oral contract relating to an existing credit agreement is unenforceable under the MCAA. MD. CODE ANN., CTS. & JUD. PROC. § 5-408(b); *Kuechler v. Peoples Bank,* 602 F. Supp. 2d 625, 632 (D. Md. 2009) (where "the alleged promise was not in writing, it is not enforceable.") The Dawson Letter is not competent to save CNAC's breach of contract claim.

The Dawson Letter acknowledges First Horizon's offer and explains that the offer was extended "to help get the loan refinanced by December 31, 2020" and "the discount was never intended to run through the July 31, 2021 maturity date" as amended by the parties' written loan amendment of March 1, 2021, which contains no provision for a loan payoff discount. (ECF No. 13-1.) CNAC alleges that it accepted the offer on June 29, 2021, when it refinanced with Howard Bank. (ECF No. 1 ¶ 18.) CNAC asserts that the "carefully worded" Dawson Letter does not assert that the October 2020 oral offer came with a year-end deadline. CNAC urges, instead, that because the letter refers to the purpose of the discount offer, the court should discern that the Dawson Letter "makes plain that Defendant never told CNAC that its offer would expire on

10

December 31, 2020." (ECF No. 16, p. 4.)  This is a bridge too far.  The Dawson Letter fails to set forth the material terms and conditions of the alleged oral contract in accordance with the MCAA.  MD. CODE ANN., CTS. & JUD. PROC. § 5-408(b) (a written credit agreement must "set[] forth the relevant terms and conditions of the agreement").

CNAC relies on case law and treatise language regarding Maryland's Statute of Frauds outside the context of the MCAA for the general proposition that the Dawson Letter satisfies the Statute of Frauds so long as the letter satisfies the court that enforcement of the alleged oral contract will not force First Horizon to consummate an oral contract it, in fact, never made. (ECF No. 12, pp. 3-4, quoting *Royal Inv. Grp., LLC v. Wang*, 183 Md. App. 406, 437 (2008), and citing *MEMC Elec. Materials, Inc. v. BP Solar Intern., Inc.,* 196 Md. App. 318, 340 (2010) (citations omitted)).  But the authorities CNAC relies on do not address the particular controlling law at issue here: the MCAA.  *See, e.g.*, *Dupont Heights Ltd. Pshp. v. Riggs Nat'l Bank,* 949 F. Supp. 383, 389 (D. Md. 1996) (quoting *Howard Oaks, Inc. V. Maryland Nat'l Bank*, 810 F. Supp. 674, 676-77 (D. Md. 1993) (explaining that "[l]ender malpractice suits based on … 'side agreements' are precisely the sort of mischief that the Maryland legislature intend to curtail by enactment of [the MCAA].")).[5]

CNAC further asserts that because the Statute of Frauds is designed to avoid fraud and not enforcement of legitimate agreements, denying CNAC the right to pursue its contract claim against First Horizon is the wrong result:  "There can be no reasonable claim of fraud by CNAC here.  Defendant does not challenge CNAC's allegation" that the Dawson Letter confirms the bank's

---

[5] Although the court's ruling is not based in whole or in part on legislative history, because the language of the MCAA is plain, clear and unambiguous, MCAA legislative history offers interesting context to the authorities cited by CNAC regarding Maryland's Statute of Frauds outside the commercial credit arena.  "This Bill will protect lenders against claims that the lender made a verbal promise to loan money and then refused to do so, or that the lender verbally agreed to extend the terms of the loan."  1989 General Assembly of Maryland, Floor Report, House Bill 704, Senate Judicial Proceedings Committee.

October 2020 "verbal offer." (ECF No. 12, p. 4.) This rationale is based on a myopic view of the dispute. Allowing CNAC to secure a half million dollar benefit from the bank based on CNAC's insistence that Mrs. Davis did not mention that the offer sunsetted on December 31, 2020, when First Horizon contends the offer expired in December 2021 (or, perhaps, that there was no meeting of the minds on this material term), flies in the face of the Statute of Frauds – both within and without the MCAA context. Indeed, this is precisely the scenario the Statute of Frauds is charged with preventing. The statute is plain on its face that the alleged credit agreement at issue must be written to be enforced. The Dawson Letter does not achieve that end. Count I will be dismissed.

## II.   PROMISSORY ESTOPPEL – COUNT II

Count II of the Complaint sets forth a claim for promissory estoppel based on First Horizon's alleged oral promise. "In Maryland, 'promissory estoppel is an alternative means of obtaining contractual relief' where acceptance and consideration may be lacking." *Donnelly,* 971 F. Supp. 2d at 508 (quoting *Maryland Transp. Auth. Police Lodge No. 34 v. Maryland Transp. Auth.,* 195 Md. App. 124, 215 (Md. App. 2010)). "Thus, . . . the nature of a lawsuit in which promissory estoppel is invoked remains that of an action to enforce a contract." *Id.* (quoting *Suburban Hosp., Inc. v. Sampson*, 807 F. Supp. 31, 33 (D. Md. 1992)).

Because the alleged oral contract is unenforceable under the MCAA, CNAC may not recover on promissory estoppel. *Donnelly,* 971 F. Supp. 2d at 508 (holding "[a]t its core, Plaintiffs' promissory estoppel claim requires enforcement of an oral modification to the underlying loan agreement with BB&T. Such a claim is plainly barred by the Maryland Credit Agreement Act.") The Motion will be granted as to Count II.

### III.  WAIVER OF CLAIMS

First Horizon argues that CNAC waived and released its claims under an amendment to the forbearance agreement between the parties, which First Horizon attaches to the Motion for alternative consideration under Rule 56. (ECF No. 9-1, p. 5.)   In light of the court's ruling on the 12(b)(6) Motion, the court declines to consider this exhibit and will not convert the Motion to one for summary judgment.  *See* p. 3 n.3, *supra*.

## CONCLUSION

For the reasons set forth herein, Defendant's Motion to Dismiss for Failure to State a Claim (ECF No. 9) is granted and the Complaint will be dismissed.

A separate order follows.

/S/

_____
Julie R. Rubin
United States District Judge

March 15, 2023